**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DANTE A. JONES #370-155 | * |
|     Plaintiff, | |
| v. | *   CIVIL ACTION NO. ELH-11-3607 |
| | |
| SGT. LISA WALTER | * |
| LT. T. KEGGINS | |
| WARDEN ELWOOD DEHAVEN | * |
|     Defendants | |

**MEMORANDUM**

On December 15, 2011, the self-represented plaintiff, Dante A. Jones, presently at Maryland Correctional Institution-Hagerstown (MCI-H), filed a civil rights action under 42 U.S.C. § 1983, later amended, seeking compensatory and punitive damages against three employees of the Harford County Detention Center ("HCDC"). ECF 1, 13. Plaintiff, who was a pretrial detainee at HCDC during the relevant period,[1] alleges that defendants Walter, Keggins, and Dehaven[2] failed to protect him or assist him with respect to two assaults, and refused to investigate the staff improprieties concerning the incidents. He also asserts that defendants'

---

[1] Initially, the Court questioned whether plaintiff, who was being held on a probation violation, could be "punished" under the Eighth Amendment. ECF 22. The Supreme Court has stated that "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977). In *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001), the Fourth Circuit examined the issue and found that although Virginia state authorities has already found Brown guilty for the crime underlying Brown's probation, it had not yet secured "a formal adjudication" that Brown had violated his probation and should be returned to state custody. The appellate court noted that if Brown was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, would apply. The parties now agree that plaintiff was a pretrial detainee during the period at issue. *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=12K08000306&loc=56&detailLoc=K.

[2] The record also contains the spelling of "DeHaven." I have used the spelling as it appears in the affidavit submitted by this defendant. *See* ECF 16, Exhibit 4.

action and inaction were racially motivated.  In addition, Jones recently moved for a jury trial. *See* ECF 27 (filed July 19, 2012).

Defendants filed "Defendants' Motion To Dismiss Amended Complaint, Or In The Alternative, Motion For Summary Judgment," along with exhibits (ECF 24).[3]  Plaintiff has filed responses in opposition thereto.  *See* ECF 19, 20, and 26.  As discussed, *infra*, the motion will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, because materials outside the four corners of the pleadings have been considered.  *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6 (D. Md.).

## Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450.  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that

---

[3] Defendants filed an earlier dispositive motion (ECF 16), which was denied, without prejudice.  *See* ECF 22.

conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).[5]

Plaintiff has not filed an affidavit under Rule 56(d).[6] Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[5] Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

[6] If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

4

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the " 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## **Factual Background[7]**

Plaintiff, who is African-American, alleges that on the evening of December 22, 2010, he

---

[7] According to defendant's initial motion to dismiss (ECF 16), on December 9, 2009, plaintiff pled guilty to a violation of Section 21-902(a)(2) of the Transportation Article of the Maryland Code. The Circuit Court for Harford County, Maryland sentenced him to two years incarceration, with all but six months suspended. The plaintiff eventually returned to the HCDC on October 18, 2010, based on a probation or parole violation. ECF 16-1 at 1-2.

was transferred from the HCDC medical unit to D Block[8] of the HCDC; David Cuffley, who is Caucasian, was his cellmate. ECF 1 at 4; ECF 24, Exhibit 7 at 16. Plaintiff claims that other detainees on D block taunted plaintiff, calling him a snitch and a child abuser, and told the escorting officers and their supervising sergeant, defendant Lisa Walter, that they intended to "piss and shit [him] down." ECF 1 at 4. Sgt. Walter and Corporal Darryle Taylor authorized Cuffley's removal to another cell. *See* ECF 24, Exhibit 7 at 17, 21. Jones claims that, immediately after the officers left the area, detainee Muhammed Rakim threw urine into his cell, striking plaintiff and his property. ECF 1 at 4. Plaintiff states the attacks continued for about an hour, and were witnessed by Officer Mullin.[9] *Id.* Walter ignored plaintiff's plea for help and left the area. Rakim, with the help of detainee John Shultz, continued to throw bags of urine and feces onto plaintiff's cell door and bars. *Id.*

Plaintiff improvised a barrier using a sheet. *Id.*; *see* ECF 24, Exhibit 7 at 18. He asserts that several officers then entered the area and began confiscating bags and containers but ignored plaintiff's concerns for his safety, as well as his requests for help, to be moved, and to exchange his clothes and bedding. ECF 1 at 4. Rakim spent the night banging on the metal wall separating his cell from plaintiff, which plaintiff maintains was "easily heard" by the officers. ECF 1 at 4. Jones believes the entire event was allowed to occur in retaliation for his complaints

---

[8] Plaintiff spent several days in the medical unit after sustaining facial injuries during a fight with Leon Morgan, another detainee. Some records reflect that the fight occurred on December 20, 2010. ECF 24, Exhibit 7 at 28, 34. Plaintiff claims, however, that the altercation with Morgan occurred on December 18, 2011. *See* ECF 1 at 15; ECF 24, Exhibit 7 at 7. The discrepancy is not material to the issues. Plaintiff was subsequently sent to the D block, a lock-down area, to serve an adjustment penalty for the fight. ECF 1 at 4; ECF 24, Exhibit 7 at 7 (plaintiff's March 20, 2011 letter to the Maryland State Police, attached to the Affidavit of Lt. Robert J. Aigner).

[9] Officer Holness, Corporal Taylor, Deputy Meador, and Mullin are not defendants. I note that plaintiff referred to Officer Honless, not Holness. *See* ECF 1.

concerning the circumstances that led to plaintiff's altercation with detainee Leon Morgan, on or about December 20, 2010.[10] *Id.*

Plaintiff also claims that the following morning "extremely hot liquid was thrown on his legs and feet by detainee Treyvon A. Johnson, who was under escort by Detective First Class Smith.[11] *Id*. at 4-5. Plaintiff alleges that his repeated requests for medical care for burns were ignored by HCDC staff. *Id.* at 5.

According to plaintiff, on December 27, 2010, he wrote to defendant Elwood Dehaven, who was then the Warden,[12] "describing [his] ordeal and request[ing] the legal names and ID Numbers of [his] attackers" but received no response until January 13, 2011, after plaintiff also complained to the Harford County State's Attorney. *Id.* Plaintiff further charges Dehaven with a conspiracy "to cover up the entire incident," including "arranging with State authorities to impede my attempts to seek justice against my attackers in a blatant attempt to absolve the Detention Center of any potential liability." Defendant Keggins also is alleged to be part of the cover-up because he "responded with indifference to [plaintiff's] grievances [and] blocked [his] attempts to appeal decisions and conspired with Warden Dehaven to cover up the entire incident." ECF 1 at 5.

On July 24, 2012, after the motion was fully briefed, Jones submitted an affidavit from

---

[10] While held at HCDC, plaintiff filed grievances in which he asserted that the December 2010 incidents were permitted to occur to retaliate against him for his other complaints concerning the facility and its employees. ECF 24, Exhibit 7 at 32-33.

[11] Smith is not named as a defendant in this lawsuit.

[12] Dehaven has since retired. *See* ECF 16, Exhibit 4, ¶ 2, Affidavit of Former Warden Elwood Dehaven.

detainee John Schultz concerning the incident of December 22, 2010.[13] *See* ECF 29. In the affidavit, Schultz averred that he was on the D block when Jones was escorted to his cell by Officers Taylor and Honless. *Id.* He recalled that detainees Rakim and Johnson began shouting that Jones was a pedophile, and others began "yelling that Jones was going to get pissed and shit down" if he stayed on the block. *Id.* Walter then entered the block and removed Cuffley from the cell. Thereafter, Rakim threw "piss water" on Jones, and Schultz "made a bag of [his] feces and passed it down to throw on Jones." *Id.*. According to Schultz, Officer Meador did nothing to stop the activity and left the block. Later, other officers entered the block and removed containers. Schultz claimed Rakim banged on the wall all night to keep Jones from sleeping. *Id.*

In addition, Schultz stated that Officers Taylor and Honless heard threats against Jones and did nothing, and that Officer Meador took no immediate action, despite seeing Rakim and Schultz throw urine at Jones. However, Schultz did not aver that Walter was present when the verbal threats were made against plaintiff. Nor did he claim that she witnessed the misconduct of Rakim and Schultz.

Detention Center personnel present a starkly different version of events.

By way of background, defendants explain that plaintiff and fellow detainee Morgan fought on December 20, 2010. ECF 24, Exhibit 7 at 28. Each was charged with assault. *See* notes 14, 15. The charges against Morgan were nol prossed that same day,[14] and the charges

---

[13] The affidavit (ECF 29) was received well after Jones's Opposition was filed. Given the difficulty prisoners experience in communicating with each other, the Court shall excuse the delay and consider the affidavit.

[14] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=12K11000368&loc=56&detailLoc=K. When interviewed during the internal investigation, plaintiff admitted he did not show up to testify against Morgan because he had been released, had transportation problems, and was caring for an ailing family member. ECF 24, Exhibit 7, Affidavit of Robert J. Aigner, attachment at 20.

against plaintiff were dismissed on May 3, 2011.[15]

As a result of plaintiff's allegations against Sgt. Walter, an Internal Affairs investigation was convened. The investigator, Lt. Robert J. Aigner of the Harford County Sheriff's Office, interviewed those who worked the evening of December 22, 2010, as well as plaintiff.[16] Corporal Darryle Taylor, the assistant supervisor that evening, stated he was never made aware of any threats or assaults that occurred, nor did he witness threats or evidence of threats directed toward plaintiff. ECF 24, Exhibit 7 at 21. Taylor helped move Cuffley from D block to A block after Cuffley indicated he feared for his safety and did not get along with plaintiff.[17] Taylor indicated Walter concurred with this decision. *Id.* Taylor believed plaintiff was manipulating his housing situation to avoid staying in D block. *Id.*

Aigner also interviewed Detective First Class Larry Lowe, who was working the dorms and assisted in moving Cuffley from D block to A block. *Id.* Lowe did not remember plaintiff stating he was threatened, nor did he remember witnessing any threats or assaults directed at plaintiff. *Id.* Cuffley told Lowe that he needed to move because a rumor had been circulated that plaintiff was a sex offender. *Id.*

---

[15] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=3R00078739&loc=34&detailLoc=DSCR.

[16] Defendants Walter and Dehaven submitted affidavits in support of their earlier motion. ECF 16, Exhibits 3 and 4. Lt. Aigner submitted an Affidavit in connection with the pending motion. *See* ECF 24-7. He attached his report to his affidavit, along with other documents, amounting to some 79 pages. At the time of Walter's interrogation by Lt. Aigner, Walter was advised of her right against self-incrimination and the consequences of making a false statement to law enforcement. ECF 24, Exhibit 7 at 69. *See* Md. Code, Crim Law Art., §9-501. ECF 24, Exhibit 7 at 68. Findings made by Aigner following his investigation are supported on the basis of interviews with HCDC personnel as well as routine logs and reports that record day-to-day activities at the HCDC. *See* ECF 24, Exhibit 7 at 34-35, 38-40, 42-56.

[17] A report prepared by Deputy Andrew Meador and approved by Taylor indicated Cuffley feared for his safety because fellow detainees in the area threatened to throw urine and feces on plaintiff. *Id.,* Exhibit 7 at 43.

Deputy Andrew Meador stated he was working the "blocks post" on December 22, 2010. ECF 24, Exhibit 7 at 22. Meador recalled that plaintiff was irate when moved into D block, indicating he wanted to stay in medical isolation. *Id.* Plaintiff told Meador he received threats within an hour after Cuffley was moved to A block. But, he never told Meador he had been assaulted; he merely stated that he believed he would be assaulted if he remained in D block. *Id.* Meador told Walter of plaintiff's concerns and Walter indicated she would talk to plaintiff. Meador then escorted plaintiff from his cell to talk to Walter, and later returned him to the cell. *Id.* Walter told Meador that, absent evidence of a threat or actual assault, nothing more would be done. Meador indicated he took plaintiff's statement that he felt threatened seriously, because Cuffley had made loud remarks on the tier about plaintiff being a child molester. *Id.* Meador saw no evidence of assaultive behavior in D block and the area stayed clean all night. *Id.*, Exhibit 7 at 22.

Detective First Class Julius Holness, a "corridor floater," stated that plaintiff did not want to be moved out of medical isolation and housed with others on D block, because he had been in a fight several days earlier. Again, no threats or assaults were reported to him by plaintiff. Holness did not recall ever having to exchange plaintiff's linens or clean the D block tier due to unsanitary conditions. *Id.*, Exhibit 7 at 24. Detective First Class Perry Wiemer, who worked overtime on the "4-12 shift" on December 22, 2010, also saw no evidence of an assault. *Id.*

Detective First Class Mary Mullin, assigned to the blocks post for the 4-12 shift on December 22, 2010, stated that an incident occurred, which she described as "minor." *Id.* at 25. After Cuffley was removed from D block, plaintiff told Mullin other detainees threw urine or water on him. Plaintiff had tied a sheet to his bars to protect himself from the liquid, but Mullin saw no liquid on the sheet or on the cell bars. Mullin found liquid on the D block, but no feces.

10

*Id.* Mullin, interviewed five months after the incident, could not state with certainty whether she reported the incident to her supervisors, but thought she had. *Id*.

Aigner also interviewed those working the following day. Deputy Joseph Danenmann stated he was assigned to the blocks post on the midnight-to-eight shift, and did not recall plaintiff telling him he was threatened or had been assaulted while in D block. *Id.* at 22. Detective First Class Gary Smith was assigned to the blocks post on the 8-to-4 shift on December 23, 2010, and indicated that the area was clean, with no evidence that urine or feces had been thrown. *Id.* at 23. Smith stated that if an area is soiled, pictures are taken and a report written. During this shift, detainee Trayvon Johnson threw liquid into plaintiff's cell. Johnson was then placed in a secured cell, and plaintiff was relocated to A block, where his property was searched and all soiled jail property replaced. *Id.*[18]

Detective First Class Garrett Stefan was working the same shift with Smith and indicated Johnson acted out while being escorted back to his cell. *Id.* at 23, 45. Stefan indicated that as soon as Johnson was secured, plaintiff was taken to the medical department and a supervisor was notified. *Id.* at 23. Plaintiff's soiled uniform was replaced. Stefan did not believe urine or feces were thrown. Both Smith and Stefan were subpoenaed to testify in court against Johnson, but that case was postponed after both Johnson and plaintiff failed to appear in court. *Id*.

Detective First Class Larry McFarland was working overtime in the blocks post on December 23, 2010. *Id.* at 23-24. He accompanied plaintiff out of D block to see a commissioner, during which time plaintiff neither requested to see a supervisor nor stated he had concerns or problems on the block. *Id.* at 24. McFarland indicated that if urine or feces had

---

[18] Notwithstanding plaintiff's claim to the contrary, no record evidence indicated he suffered burns or other injuries which required medical intervention as a result of Johnson's misconduct. *See, e.g.,* ECF 24, Exhibit 7 at 45.

been found on D block, a supervisor would have been notified. *Id*.

Plaintiff's complaints concerning the incidents of December 22 and 23, 2010, were brought to the attention of defendant Elwood Dehaven, the Warden at the relevant time. He met personally with plaintiff and defendant Keggins to discuss the allegations on March 30, 2011. ECF 16-4, Exhibit 3, ¶ 4 (Affidavit of Dehaven). Following the meeting an Internal Affairs investigation was initiated to determine the validity of plaintiff's allegations that HCDC staff had mistreated plaintiff and that Sgt. Walter had neglected her duty to protect plaintiff, thereby threatening his safety. ECF 24, Exhibit 7 at 1, 13. As a result of that investigation, Investigator Aigner and Harford County Sheriff Jesse Bane concluded that, "[d]ue to inconsistencies in the statements made by the complainant, lack of witnesses to corroborate the allegations and based on the facts presented to Lt. Aigner through incident reports and interviews….[there is] no evidence of any wrong doing by Sgt. Walter….[T]he allegation of Sgt. Walter threatening the safety of Dante Jones is unfounded." ECF 26, Exhibit 7 at 13.

## Discussion

The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are coextensive with those provided to convicted prisoners by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988)); *see also Riley v. Dorton*, 115 F. 3d 1159, 1167 (4th Cir. 1997) (pre-trial detainee's Fourteenth Amendment right with respect to excessive force is similar to prisoner's Eighth Amendment right). The inquiry with respect to conditions of confinement is whether those conditions amount to punishment of the pre-trial detainee, as due process proscribes punishment of detainee before proper adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. at 535.

Not every inconvenience that is encountered during pre-trial detention amounts to "punishment" in the constitutional sense. *Martin,* 849 F.2d at 870. A particular restriction or condition of confinement amounts to unconstitutional punishment in violation of the Fourteenth Amendment if it is imposed with the express intent to punish or it is not reasonably related to a legitimate, non-punitive goal. *Bell*, 441 U.S. at 538- 39 (restrictions or conditions that are arbitrary or purposeless may be considered punishment). In determining whether the challenged conditions amount to punishment, it is not the province of this court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995).

Only conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). In order to establish the imposition of cruel and unusual punishment, plaintiff must prove two elements - that he suffered deprivation of a basic human need that was "*objectively* sufficiently serious," and that "*subjectively* [defendants] acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). To withstand summary judgment on a challenge to prison conditions, plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Similarly, in order to prevail on a claim of failure to protect from violence, plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).

Plaintiff alleges that Walter deliberately exposed him to assault on two occasions and thereafter left him covered in human waste and deprived him of medical care in retaliation for

earlier complaints he had voiced against HCDC staff. ECF 1 at 11. He further alleges that defendants Dehaven and Keggins attempted to cover up the incidents to protect HCDC personnel and impeded his efforts to prosecute his assailants and Walter. *Id.* at 5. The evidence does not support these allegations.

Plaintiff arrived in D block, a lock-down segregation area, after spending several days in the medical unit where he received treatment for injuries sustained on December 20, 2010, in an altercation with detainee Morgan.[19] He was not happy to move from medical isolation to the lock-down cell. ECF 24, Exhibit 7 at 19, 22. To the extent that other detainees took umbrage at plaintiff's role in the December 18 incident, or believed him to be a "snitch" or pedophile, nothing suggests Detention Center personnel incited or promoted these individuals to harm plaintiff. By his own admission, plaintiff indicates Officer Mullin told detainees housed on D block that plaintiff was not a child molester. ECF 24, Exhibit 7 at 20.

Plaintiff's belief that Detention Center personnel removed Cuffley, a known gang affiliate, because they knew others were going to assault plaintiff finds some support in the investigative record. Although defendants maintain that Cuffley was afraid to be housed with plaintiff, whom he believed to be a child abuser, other officers indicated Cuffley stated his gang beliefs prevented him from being housed with plaintiff, ECF 24, Exhibit 7 at 15, 17, and one officer stated Cuffley told him he needed to be moved before others on D block acted out against plaintiff. ECF 24, Exhibit 7 at 43.

It is not disputed that Cuffley was removed from the cell and taken to another block. ECF 24, Exhibit 7 at 30, April 4, 2011 letter from Walter to Keggins. Although the precise

---

[19] Detention Center personnel believe plaintiff wanted to remain on the medical unit rather than be housed with other detainees and given a top bunk. ECF 24, Exhibit 7, attachment at 17, 21-22, 24. Plaintiff stated he did not mind the move. *Id.* at 20. This dispute is not material to the outcome of this case.

reason for Cuffley's removal remains unclear, it is apparent that Walter had plaintiff escorted away from other detainees to listen to his concerns. She determined there was no evidence that his safety was in jeopardy and plaintiff was returned to his cell on D block. ECF 24, Exhibit 7 at 18. At most, one "minor" incident occurred wherein some type of liquid was thrown toward plaintiff's cell. The incident was not repeated; D block remained clean; and neither plaintiff nor his property was soiled or drenched as a result.

HCDC personnel reporting to work the following day likewise found no evidence of excrement on D block. Furthermore, the incident involving detainee Johnson was promptly resolved, resulting in plaintiff's removal to another area of confinement, where he was provided with clean clothing. Plaintiff received no injury as a result of either incident, and nothing suggests that Walter or other staff exhibited deliberate or callous indifference by exposing plaintiff to a known risk of harm.

There is no suggestion, much less evidence, that Detention Center personnel, including defendants Dehaven and Keggins, interfered in any way with plaintiff's ability to prosecute his assailant or impeded his ability to defend himself against charges stemming from the incident of December 22, 2010. Furthermore, nothing suggests that plaintiff's unfortunate encounters with fellow detainees resulted from retaliatory animus on the part of HCDC personnel.

Plaintiff also suggests that his attempts to bring criminal charges against defendant Walter were ignored. The court notes that plaintiff's letter of complaint to the Maryland State Police concerning Walter's alleged inaction (ECF 24, Exhibit 7, attachment at 6-10) resulted in an Internal Affairs investigation against Walter. Interviews and results of the investigation, attached to the Aigner affidavit, demonstrated no basis for criminal prosecution of Walter. In any event, private citizens have no constitutional or other right to a criminal investigation, nor

any judicially-cognizable interest in the prosecution or non-prosecution of another. *See* Linda *R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

In order to prevail on a claim of retaliation, plaintiff must show that a retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). A claim that alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone. *See Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

In *American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993), the Court said:

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). Plaintiff's bald claims of conspiracy and retaliation simply lack evidentiary support and thus fail.

Plaintiff has responded to defendants' dispositive motion, and eventually filed Schultz's

affidavit to contradict defendants' verified version of events.[20]  However, the Schultz affidavit does not contradict the material facts presented by the defendants concerning their conduct. Although a court may treat a verified complaint as an affidavit for purposes of summary judgment, plaintiff's complaint has not been verified.[21]  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  Any other documents the party submits may not be considered on a motion for summary judgment unless they are authenticated by either an affidavit or deposition.  *See Orsi v. Kirkwood*, 999 F. 2d 86, 92 (4th Cir. 1993).

For the reasons stated, summary judgment is granted in favor of defendants.[22]  A separate Order shall be entered in accordance with this Memorandum.

August 8, 2012              /s/
(Date)                         Ellen L. Hollander
                              United States District Judge

---

[20] The signed statements from fellow detainees concerning one occasion on April 7, 2011, wherein Officer Boblitz allegedly scanned an item of plaintiff's legal mail, ECF 26, Exhibit 3, is non-responsive to issues pertaining to the alleged failure to protect plaintiff from attack or provide him with assistance afterward.

[21] Plaintiff's "Memorandum of Law" contains a statement within the Certificate of Service indicating it was written "under penalty of perjury."

[22] Accordingly, plaintiff's request for trial by jury (ECF 27) is denied.